U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

MAR 30 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Bellot

versus

Marine Surveys, L.L.C.

Civil Action No. 15-00140

Judge Richard T. Haik, Sr.

Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, Or Alternatively, Motion For Partial Summary Judgment [Rec. Doc. 8] filed by defendant Marine Surveys, LLC ("Marine Surveys") and plaintiff, Steven Bellot's, Opposition to the Motion [Rec. Doc. 12]. For the reasons that follow, the Motion will be denied.

### I. Background

Plaintiff, Steven Bellot, states in his sworn affidavit that "he served six months as a seaman for Marine Surveys aboard the vessels M/V OMAS MESHACK and M/V PRINCESS GERTRUDE" during which time John D. Silvetti "was the Managing Member of Marine Surveys and the managing operator of the vessels M/V OMAS MESHACK and M/V PRINCESS GERTRUDE." *R. 12-2, Aff. Of Plaintiff.* In particular, Bellot states that for the period between December 14, 2013 and March 13, 2014, Marine Surveys assigned him as a Field Project Manager and/or Party Chief to work off the Nigerian coast aboard the M/V OMAS MESHACK and M/V PRINCESS GERTRUDE, and he was last discharged from a Marine Survey vessel on September 8, 2013.[1] *Id.* Plaintiff states that "although he earned

---

[1] As Field Project Manager/Party Chief, plaintiff's job was to direct the vessels where they would conduct surveys or otherwise work. *Id.*

a total of $190,400.00 in seaman's wages between December 12, 2013 and September 8, 2014, Marine Surveys only paid him a total of $66,000.00." *Id.*

Plaintiff attaches to his affidavit a copy of his entry visa into Nigeria for the period between December 14, 2013 and March 13, 2014. The name "Silvetti Marine Survey" is written on the bottom of the visa. *Id., Exh. A-1*. Plaintiff also attaches a "Daily Progress Report" dated February 3, 2014 which confirms that he worked as Field Project Manager on the M/V OMAS MESHACK on that date. *Id., Exh. A-2*. The report provides that the subcontractor was "Silvetti Marine Surveys Nigeria Limited (SMSNL)" and the client was "Chevron Nigeria Limited (CNL)."[2] Also attached to the affidavit is an email dated April 10, 2014, from John Silvetti, Managing Member, JD Silvetti Group of Companies ("the Company"), to several individuals including plaintiff, indicating that delays in the Nigerian work had cost $13,000 a day and placed the company "in quite a pinch." *Id., Exh. A-3*. In an update email to "Office Staff; Offshore Staff" dated April 25, 2014, Silvetti indicates that the company would begin "Campaign #5" with Chevron which would "require us to man 5 vessels; lay barge & 2 tugs, DR2, 2 Four Point Dive vessels and one Lift Boat." *Id., Exh. A-4*. In another update email dated August 20, 2014, Silvetti states that Chevron Nigeria Ltd would transfer funds to Marine Surveys for the work done on the vessels so the "nightmare" of nonpayment would end. *Id., Exh. A-5*.

---

[2] According to their websites, the managing director of Silvetti Marine Surveys Nigeria Limited is John D. Silvetti, www.sms-nigltd.com; Chevron Nigeria Limited ("CNL") is a Chevron subsidiary which operates under a joint-venture arrangement with the Nigerian National Petroleum Corporation, www.chevron.com/countries/nigeria/.

Plaintiff attaches the affidavit of Michael J. Nicholas Restivo. *R. 12-5, Exh. D.* Restive states that between December 13, 2013 and March 12, 2014, he was employed as a "party chief" to position offshore oil rigs and dive boats for Alternative Positioning Solutions ("APS"), one of the Silvetti Companies. He avers that on or about December 2013, the Company began to experience cash flow problems and delayed and cut back payment of payroll to their employees, including Restivo. Restivo further states that the Company began to issue payroll checks which had the word "Advance" written on the check's memo line even though the payroll checks were for past employment, late and short of the full amount already owed him.

Plaintiff also attaches the affidavit of Eric Swinney, the former Chief Executive Officer of the Company. *R. 12-6, Exh. E.* Swinney states that Silvetti transferred personnel, including plaintiff, as well as assets, between various Silvetti Group Companies, both domestically and in Nigeria, without regard to the supposed separateness of the companies and without invoicing for such transfers. He further states that in December 2013, the Company began to experience cash flow problems and cut back payments to their employees and began to issue payroll checks which supposedly were net of tax withholdings made by the Company to the IRS. Swinney avers that he personally confirmed with the IRS that they have no record of any such tax payments made on behalf of the employees and that he has been unable to obtain a W-2 form from the Company.

On January 5, 2015, plaintiff made written demand upon Members of Marine Surveys

L.L.C., for payment of past due seaman's wages totaling $124,400.00. *Id., Exh. B.* On January 8, 2015, Silvetti replied, indicating that the Nigerian negotiations had been completed and a partial payment was made on December 31, 2014 and stating, "[i]t is our expectations to be able to pay Mr. Bellot within 10 days...."

On January 26, 2015, plaintiff filed this action for payment of past due seaman's wages under the General Maritime Law, for penalties under 46 U.S.C. 10313(g)(1) and pursuant to 46 U.S.C. 10302, failing to make a written shipping agreement with plaintiff. Marine Surveys filed a responsive pleading to plaintiff's Complaint, on March 11, 2015, including an answer of general denial and a counter-claim against plaintiff. *R. 11*. In the counter-claim, Marine Surveys contends it loaned $67,021.08 to plaintiff and as a result of the loan, plaintiff is indebted to Marine Surveys in the approximate amount of $27,106.38, plus interest. *Id., ¶ III.* Marine Surveys filed this Motion For Summary Judgment on March 3, 2015 contending that plaintiff has no claim under 46 U.S.C. § 10302 or § 10313. *R. 8.*

*II. Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir.2002). The party

4

moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir.1997). When the moving party, has met its Rule 56(c) burden, the nonmoving party, cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir.2004).

*III. Analysis*

Marine Surveys contends that plaintiff cannot assert a claim under 46 U.S.C. § 10302 or 46 U.S.C. § 10313. Section 10302 details the agreement requirements for non-fishermen merchant seamen on U.S.-to-foreign voyages. Section 10302(a) provides that "[t]he owner, charterer, managing operator, master or individual in charge shall make a shipping agreement in writing with each seaman before the seaman commences employment." 46 U.S.C. § 10302(a). The requirement of written shipping articles is designed to "protect seamen who were otherwise subjected to harsh treatment and deception." *Sylvis v. Rouge Steel Co.*, 873 F.2d 122, 125 (6th Cir.1989).

Plaintiff also seeks to recover the double wage penalty imposed by section 10313. 46 U.S.C. § 10313 provides in relevant part:

> e) After the beginning of the voyage, a seaman is entitled to receive ... on demand, one half of the balance of wages earned and unpaid at each port at

which the vessel loads or delivers cargo during the voyage.... If a master does not comply with this subsection, the seaman is released from the agreement and is entitled to payment of all wages earned....

(f) At the end of the voyage, [or upon discharge] the master shall pay each seaman the balance of wages due the seaman....

(g)(1) ...[w]hen payment is not made as provided in subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

46 U.S.C. § 10313. The purpose of section 10313 is "to secure prompt payment of seaman's wages ... and thus to protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 572 (1982). In light of this purpose, section 10313 and its predecessors have been liberally construed in favor of seamen. *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 781 (1952) ("Whenever congressional legislation in aid of seamen has been considered here, since 1872, the Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of seamen.").

In support of dismissal of plaintiff's claims under these statutes, Marine Surveys attaches the affidavit of its Managing Member, John Silvetti, which states, "Marine Surveys did not own, charter or operate any vessel upon which Steven Bellot worked off the coast of Nigeria and which is at issue in his Complaint [and] was also not the managing operator of any such vessel and had no employees or representatives that served as the master or individual in charge of any [such] vessel...." *R. 8-3*. Marine Surveys provides no additional evidence nor any jurisprudence to support its position that plaintiff cannot assert claims under

§§ 10302 and 10313.

After comparing the dearth of evidence provided by movers— Silvetti's self-serving and conclusory affidavit which essentially states that Marine Surveys had absolutely no association with any of the vessels on which it assigned its employees to work in foreign waters and countries—with that attached to plaintiff's opposition, including the emails and correspondence between plaintiff and Marine Surveys, the Court finds there are genuine issues of material fact as to whether or not Marine Surveys has liability under 46 U.S.C. §§ 10302 and 10313. Accordingly, the Court will deny Marine Surveys' Motion For Summary Judgment.

_____
Richard T. Haik, Sr.
United States District Judge