U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

APR 28 2015

TONY R. MOORE, CLERK
BY_____ WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Bellot

Civil Action No. 15-00140

versus

Judge Richard T. Haik

Marine Surveys, LLC

Magistrate Judge C. Michael Hill

## ORDER

Before the Court is Marine Surveys LLC's ("Marine Surveys") Motion To Reconsideration The Court's Ruling On The Motion For Partial Summary Judgment Filed On Behalf Of Marine Surveys, LLC. [Rec. Doc. 16], Plaintiff, Steven Bellot's, Opposition Memorandum [Rec. Doc. 17] and Marine Surveys' Reply [Rec. Doc. 18][1].

*Background*

On March 30, 2015, the Court entered an order denying Marine Surveys' Motion For Partial Summary Judgment. *R. 14, 15.* Marine Surveys contended in the motion that plaintiff, Steven Bellot's, claim for wages owed under 46 U.S.C. §§ 10302 and 10313 should be dismissed. The Court found that "the dearth of evidence" submitted in the motion (existing solely of Managing Member, John D. Silvetti's, "self-serving and conclusory affidavit"), was insufficient to overcome its burden of establishing there existed no genuine issue as to any material fact that Marine Surveys was not "the owner, charterer, managing operator, master or individual in charge" of the vessels on which plaintiff worked, such that the statutes could not apply.

*Legal Standard*

The Federal Rules of Civil Procedure "do not recognize a motion for reconsideration in *haec verba*." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th

---

[1] The Court admonishes counsel for Marine Surveys in that the irrelevant characterizations supporting his client and disparaging the Plaintiff are inappropriate and unprofessional. Moreover, the reply brief fails to address any new issues raised in Plaintiff's Opposition. In the future, leave to file such a pleading will be denied.

Cir.1990), *abrogated on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (*en banc*). However, the Fifth Circuit has held that such a motion may be entertained by a court and should be treated either as a motion to alter or amend pursuant to Rule 59(e) or a motion for relief from judgment pursuant to Rule 60(b). *Shepard v. Int'l Paper Co.*, 372 F.3d 326, 328, n. 1 (5th Cir.2004). Specifically, if the motion for reconsideration is filed and served within 28 days of the rendition of judgment the motion falls under Rule 59(e). Because the current motion was filed within 28 days of the judgment, the Court will consider it under Rule 59(e).

Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir.2004). Under Rule 59(e), there are three possible grounds for granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir.2002). The "unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *ICEE Distributors, Inc. v. J & J Snack Foods Corp.*, 445 F.3d 841, 847 (5th Cir.2006). The court's duty in ruling on a motion for reconsideration is to "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir.1993). When a party submits additional evidence not part of the summary judgment record for reconsideration, the court considers "the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available before the party responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *Templet* at 479.

*Legal Analysis*

Marine Surveys moves the Court to reconsider its ruling as to 46 U.S.C. § 10313. Marine Surveys complains that the Court ruled on its motion before the deadline for filing a reply and the date of oral argument, and represents that it intended to submit a reply containing additional evidence in a supplemental affidavit.[2] "[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *See Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 226-227 (2d Cir. 2000); *see also Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir.2004). The ownership of the vessels was not a "new material issue" raised in Bellot's opposition. As stated by plaintiff, "the only issue before the Court is whether ... Marine Surveys, LLC was the owner or master of the Nigeian vessels." *R. 16*. Because, however, Plaintiff's Opposition Memorandum could be construed as having raised the issue that Plaintiff, as Marine Surveys' employee, was assigned to direct the activities of the M/V OMAS MESHACK and PRINCESS GERTRUDE, the Court will grant the motion to reconsider its ruling in light of Marine Surveys' argument in reply to this issue.

Marine Surveys includes in its reply argument and Supplemental Affidavit of John D. Silvetti in its Motion. In his first affidavit, Silvetti stated, "Marine Surveys did not own, *charter* or operate any vessel upon which Steven Bellot worked off the coast of Nigeria and which is at issue in his Complaint ... and had no employees or representatives that served as the master or individual in charge of any [such] vessel...." (Emphasis added). Silvetti now states in his Supplemental Affidavit that Silvetti Marine Surveys Nigeria Ltd. ("Silvetti Nigeria"), of which he is a minority shareholder, performs all services in Nigeria and that Silvettie Nigeria "*chartered* the M/V OMAS MESHACK from Ocean Marine Services, Ltd." and "*chartered*

---

[2] "[R]ule 56(c) requires neither an oral hearing nor advance notice of a 'date certain' on which a motion for summary judgment is to be decided...." *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).

3

the M/V PRINCESS GETRUDE from Lenimar Ocean Trawlers, Ltd." *R. 16-1*. (Emphasis added). Copies of both charter agreements are attached to the Supplemental Affidavit. *Id., ITEMS 1 & 2*. Silvetti further states that Marine Surveys did not select, employ, provide or pay the captain or vessel crew of the Nigerian vessels and that neither Silvetti, Marine Surveys, LLC, Silvetti Nigeria, or any other affiliated company owned or had an interest in the vessels.[3] *R. 16-1*.

Relying on *Caldwell v. Solus Ocean Systems, Inc*, 734 F.2d 1121 (5th Cir. 1984), Marine Surveys now contends that the statute does not extend to employers. In *Caldwell*, the plaintiff sued his employer, which was neither the owner nor the master of the vessel, but was the charterer of the vessel on which plaintiff worked. The court rejected the plaintiff's argument that the statute should be construed to extend to employers as well as those enumerated in the statute. *Id.* at 1122. While the court recognized that many seamen are now employed by someone other than the vessel owner or master, the court concluded that excluding employers from the statute "does not produce such an absurd result that we are persuaded to deviate from the plain and unambiguous statutory language." *Id.* at 1123.

Also, Silvetti now states it entered into a time charter agreement for the use of the subject vessels. Generally, in a time charter, "the vessel owner retains possession and control of the vessel; provides whatever crew is needed and is responsible for normal operating expenses. Further, in a time charter the owner fully equips and maintains the vessel, makes repairs as needed and provides insurance on the vessel." *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir.1993). The statute places obligations on "the master or owner." An earlier section of the statute defines master as "the individual having command of a vessel" and owner as "the person to whom the vessel belongs." 46 U.S.C. § 10101(1). Thus, Silvetti contends, under *Caldwell* and the plain language of the statute it cannot be liable for penalty wages.

---

[3] The evidence in Silvetti's Supplemental Affidavit was obviously information known to him at the time his original affidavit was filed into the record of the motion for summary judgment.

4

The Court finds the recent case of *Kaluom v. Stolt Offshore, Inc.*, 474 F.Supp.2d 866, 878 (S.D.Tex.,2007), instructive on this issue. *Kaluom* involved a collective action brought by foreign seamen working in the Gulf of Mexico as riggers or pipe-facing machine operators, against their employer, an American company. Plaintiffs contended that their employer, who had entered into a time charter agreement for the use of the vessel, was the *pro hac vice* owner of the American vessel and was therefore liable for wage violations under the FLSA. Plaintiffs further contended that because their employer maintained full possession and control of the vessel, it was in fact the master of the vessel. Noting that under 46 U.S.C. § 10101(1), "a master is the individual having command of a vessel," the court held that the evidence presented enough of an issue of material fact to survive summary judgment. In particular, the court stated the plaintiff's deposition testimony and other evidence indicated the defendant supplied the foreign labor for the vessel, arranged to provide the food and cooks for the vessel, directed the performance of the activities aboard the vessel, and "most compelling," because one of the defendant's employees was the barge superintendent. *Id.*

While Marine Surveys argues that *Caldwell* should control in this case, the court in *Caldwell* did not consider whether or not the defendant was the master or the owner of the vessel. Instead the court stated, "[b]ecause it is undisputed that [the defendant] was not the master or the owner of the vessel on which [the plaintiff] was employed, but was [the plaintiff's] employer, the sole issue before us is whether [the statute] extends to "employers...." *Caldwell* at 1123. Here, the Service Agreements related to the charter of the M/V PRINCESS GERTRUDE and the M/V OMAS MESHACK include that Marine Surveys' payment for chartering the vessel was exclusive of meals for its personnel, fuel/lube oil and water, "all NPA pilotage charges, including port charges, dues, clearance (in and out), Local pilotage, Naval clearance" as well as "berthing in/outside Nigeria, Community settlement," "[a]ll expenses incurred on behalf of [Marine Surveys]."[4] Plaintiff's affidavit states that he "worked as the

---

[4] The Service Agreement for the M/V OMAS MESHACK specifically states the charter payment is exclusive of "meals ... hire surveys, tug assistance if required, community negotiation and cost, security and escort cost, customs formalities, all duties and taxes when

Field Project Manager/Party Chief in Nigeria for Marine Surveys, LLC and his duties included directing the named vessels where they would conduct surveys or otherwise where the vessels would work." A Daily Progress Report dated February 13, 2014, indicates that Silvetti Nigeria, Sub Contractor, for Niger Dive Limited, Contractor, performed survey work on the M/V OMAS MESHACK for Chevron Nigeria Limited (CNL). *R. 12-2*. The Report further provides that the on board personnel included nine Silvetti Nigeria Survey personnel and eight M/V Omas Meshack vessel crew. *Id.* Plaintiff is listed as "Field Project Manager." *Id.*

The purpose of section 10313 is "to secure prompt payment of seaman's wages ... and thus to protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 572 (1982). In light of this purpose, section 10313 and its predecessors have been liberally construed in favor of seamen. *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 781 (1952) ("Whenever congressional legislation in aid of seamen has been considered here, since 1872, the Court has emphasized that such legislation is largely remedial and calls for liberal interpretation in favor of seamen.").

After considering the foregoing law and jurisprudence, viewing the evidence in the light most favorable to Plaintiff, and resolving any inferences in Plaintiff's favor, the Court finds that there is a genuine dispute of material fact as to whether Marine Surveys, LLC was the master of the vessel(s) on which Plaintiff was employed. Accordingly,

**IT IS ORDERED** that defendant, Marine Surveys LLC's, Motion For Reconsideration And/Or New Trial [Rec. Doc. 74] is **DENIED**.

**THUS DONE AND SIGNED** this 27th day of April, 2015 at Lafayette, Louisiana.

_____
Richard T. Haik, Sr.
United States District Judge

---

required and all permissions and licences."